UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALLEN M. BINNS

                Plaintiff,

vs.                                   Case No.    17 CV ___

**RUSS DARROW CHRYSLER, LLC,**
d/b/a Russ Darrow Used Car Superstore,

                Defendant.

---

## COMPLAINT

---

Plaintiff, Allen M. Binns, by his attorneys, Bakke Norman, S.C., by David C. Schoenberger, states and complains of the Defendant as follows:

### PARTIES

1. Plaintiff, Allen M. Binns (hereinafter "Binns"), is an adult resident of the State of Wisconsin, residing at 1079 Anderson Drive, Apartment A, in Green Bay, Wisconsin 54304.

2. Plaintiff Binns is an employee as that term is defined under 42 U.S.C. § 2000(e)(f).

3. Defendant, Russ Darrow Chrysler, LLC, owns and operates a car dealership located at 2800 Ramada Way, Green Bay, Wisconsin 54304.

4. Defendant, Russ Darrow Chrysler, LLC, also owns and operates a car dealership located at 4400 West College Avenue, Appleton, Wisconsin 54913.

5. Defendant, Russ Darrow Chrysler, LLC's corporate office is located at W133N8569 Executive Parkway, Menomonee Falls, Wisconsin 53051-3344.

1

6. Defendant, Russ Darrow Chrysler, LLC (hereinafter "Russ Darrow") is an employer as that term is defined under 42 U.S.C. § 2000(e)(b).

**NATURE OF ACTION**

7. Plaintiff Binns claims that Defendant, Russ Darrow, discriminated against him in the compensation, terms, conditions or privileges of his employment based on his race and/or color; engaged in impermissible race-based harassment; retaliated against Plaintiff Binns for opposing discriminatory employment practices related to his race and/or color; and that he was constructively discharged due to his race and/or color, all in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000(e)-2 and 42 U.S.C. § 2000(e)-3.

8. Plaintiff Binns further claims that Defendant, Russ Darrow, discriminated against him in the compensation, terms, conditions or privileges of his employment based on his race; engaged in impermissible race-based harassment; retaliated against Plaintiff Binns for opposing discriminatory employment practices related to his race; and that he was constructively discharged due to his race, all in violation of 42 U.S.C. § 1981.

9. Plaintiff Binns filed a Complaint with the Department of Workforce Development, Equal Rights Division on January 27, 2015, Case No. 2015-00205, which was cross-filed with the EEOC, Case No. 26G-2015-00442C. Binns also filed an Amended Complaint with the Department of Workforce Development, Equal Rights Division on July 31, 2015 under the same case numbers set forth above, which was cross-filed with the EEOC.

10. Plaintiff Binns received a Notice of Right to Sue from the EEOC on October 24, 2017, with respect to the Complaint and Amended Complaint identified in paragraph 9 above.

## JURISDICTION

11. Jurisdiction is proper in this Court as this case presents a federal question and controversy. Venue in the Eastern District is appropriate because the conduct giving rise to Plaintiff's claims occurred in this District.

## FACTS

12. On or about October 7, 2013, Binns, an African American, was hired by Defendant as a car salesman at one of its facilities located in Green Bay, Wisconsin.

13. When Binns started work until May/June, 2014, Binns' supervisors included Tony Dollinger (General Sales Manager) and Paul McDonald (General Manager).

14. In May/June, 2014, Paul McDonald was replaced by Bill Pierce as the General Manager.

15. Also in the summer of 2014, Sally Neuman was hired as a Sales Manager.

16. By June, 2014, Binns' supervisors included Tony Dollinger (General Sales Manager); Sally Neuman (Sales Manager); and Bill Pierce (General Manager).

17. At all times relevant hereto, Tony Dollinger had the authority to hire, discipline, and discharge Binns.

18. At all times relevant hereto, when he became the General Manager, Bill Pierce had the authority to hire, discipline, and discharge Binns.

19. At all times relevant hereto, Sally Neuman, when she was hired as a Sales Manager, had the authority to hire, discipline, and discharge Binns.

20. At the end of 2013, and during 2014 (and in particular during the early spring of 2014 to approximately November of 2014), Tony Dollinger would make derogatory, harassing

3

and discriminatory comments to or about Binns and/or African Americans during the work day at Russ Darrow.

21. The comments made included, but were not limited to, the following: (1.) "Blacks should have been happier when they were slaves, they had it easier then – they had free housing, free meals and were well taken care of by their Masters. When slavery was taken away, then they had to work for themselves and weren't being taken care of and you have to think, who was going to hire them? They had it rough when slavery was taken away"; (2.) "98.8% of black men are in prison because they don't pay child support, but not you Al, we take your child support out of your paycheck to make sure you pay it"; (3.) "I know what you want for lunch Al, you people eat fried chicken and watermelon, and oh yeah, you like grape Kool-Aid"; (4.) "Brothers pay their women child support on the side"; (5.) "If I had a daughter, my biggest fear would be she would come home with a black guy – I don't know what I would do"; (6.) "Blacks and Indians are dumb – they don't know how to manage their money – look at all the money Indians get from Casinos – they need someone like me to manage their money for them – look at all the money blacks get when they make it to the pros – they use their money on cars, women, drugs and alcohol, just like you Indians [in reference to co-worker Basil Richmond]"; (7.) "Should make it easier for blacks to get into sports because they are uneducated"; (8.) "Blacks need to go to special colleges because they are not smart enough"; (9.) "Blacks have to go to black colleges because you don't have to be smart and someone would do your homework for you"; (10.) "If it weren't for the NFL, most black men wouldn't even have jobs"; (11.) "Black people need athletic scholarships to be able to go to college"; (12.) "Blacks are better athletes because they have extra muscles in their legs"; (13.) "Can't leave keys in a car when you're in the hood"; (14.) "Stupid-ass niggers"; (15.) "Blacks are always late" [made when Binns used the

4

restroom, stepped outside, delivered a vehicle, came back from lunch, etc.]; (16.) "I [Tony] am surprised the dog could even see you" (the wall behind Allen Binns was dark brown); (17.) "You [Al] know what it's like to be in the hood"; (18.) "You [Al] should dress up as a pimp"; (19.) "You [Al] want to take them? Nobody else can understand them" and "Al, is that one of your relatives?" (in reference to African American customers).

22. In addition to the above comments, at one point during 2014, Russ Darrow employees each put in a dollar to buy lottery tickets. A discussion was then held among the group about what everyone would do with the money if they won it. Tony Dollinger looked at Binns and said "If I won, I would buy a couple of guys just like you Al, one to open the doors to my mansion, and the other to act as my chauffeur."

23. Binns objected to these comments and conduct directly to Dollinger. Despite his objections, Dollinger never stopped making racially charged comments about Binns and/or African Americans.

24. Binns also brought complaints about Dollinger's behavior and conduct to Paul McDonald. When he did, McDonald said he would speak with Dollinger about the comments, and would make sure Dollinger went to sensitivity training.

25. After Bill Pierce took over for Paul McDonald as General Manager, Binns would complain to Bill Pierce about Tony Dollinger's conduct and comments and what was going to be done about it. When he did, Pierce would tell Binns "don't play that race card with me."

26. Also after Basil Richmond, a Native American salesman, was fired in October of 2014, when Binns would complain to Pierce about Dollinger's conduct, Pierce told Binns "Basil complained, and look where it got him" or words to that effect.

5

27. During the summer of 2014 to the end of his employment with Russ Darrow, Bill Pierce would also make derogatory, harassing and discriminatory comments to or about Binns during the work day at Russ Darrow.

28. The comments made included, but were not limited to, the following: (1.) "You [Al] know what it's like to be in the hood"; (2.) "You [Al] should dress up as a pimp"; and (3.) Referring to Binns as "Cookie."

29. In addition, at times, Bill Pierce would join in with Tony Dollinger in calling Binns names, such as "pimp."

30. On one occasion in 2014, Dollinger and Pierce placed dice around the rearview mirror of Binn's vehicle, a wrap on his steering wheel, and his name in large bold silver letters. Then, in front of the sales staff, Pierce announced, "here's your pimped out ride Al".

31. Also, during the summer of 2014 to the end of his employment with Russ Darrow, Sally Neuman would make derogatory, harassing and discriminatory comments to or about Binns and/or African Americans during the work day at Russ Darrow.

32. The comments made included, but were not limited to, the following: (1.) Referring to Al as "the big black guy"; (2.) "You want racism, I'll show you racism"; (3.) "I [Sally] am surprised my dog likes you [Al] because my dog doesn't like black people"; and (4.) Sally threatened to shoot Al, saying "if I ever have a problem with you, I will just shoot you and ask questions later, and then let the police figure it out – I was an ex-cop and I carry a gun in my car"

33. Binns objected to Neuman about her conduct. On one occasion when he did, she said "you want racism, I'll show you racism."

34. Binns would also complain to Bill Pierce about Sally Neuman's conduct and comments and what was going to be done about it. Despite his complaints, nothing was done to Neuman or to end her discriminatory conduct and comments.

35. After approximately mid-January of 2014 and continuing through early October 2014, Binns heard or was told about the discriminatory and derogatory comments being made about Native Americans, and/or about or to Native American employees, by Tony Dollinger.

36. The comments made included, but were not limited to, the following: (1.) "What is it like not to pay taxes – I notice you Indians don't pay taxes"; (2.) "You Indians don't pay taxes on cars or houses" or on "big ticket items"; (3.) "You fucking people think you are fucking special"; Indians "expect everything for nothing"; (4.) "You don't drink? Then you would be the only Indian I know that doesn't drink alcohol – all they do is drink and squander their money away"; (5.) "Because Indians squander their money, they need me to manage their money for them"; (6.) "Why is it you Indians get so offended by the term "Redskins", you should be honored by that"; (7.) Dollinger would frequently use the term "Redskin" to describe Basil Richmond and Native Americans; (8.) Dollinger said you can tell a person's race by the color of their skin and that it was easy to tell who was Indian because of "their Redskin"; (9.) "Look at you, you have redskin, certainly redder than mine"; (10.) "You can tell who is Indian because of their redskin"; (11.) "So you got yourself a squaw"; (12.) Dollinger would often call female Native Americans he saw "squaws", and would tell a Native American employee [Basil Richmond]; "Hey, Basil, there is a squaw out on the lot, go get her"; (13.) "Danni's not a real Indian"; (14.) "You Indian guys are all fags.....because you use a sweat lodge together, get naked, and sit tight together rubbing against each other in the dark"; (15.) "You people think you have special treatment coming because tax payers like me have been taking care of you people

7

your whole lives. You people never had to work for anything. Indians don't grow up knowing the value of money. You never had to earn it"; (16.) "You ain't Native American—you look whiter than me"; (17.) Dollinger told Basil Richmond that Indians "were not the first ones here, even though you like to act like you were. The Vikings were here before the Indians"; and (18.) Dollinger also said "My ancestors were Gods, Greek people are the descendants of Gods, and we did the conquering, while you people are the ones who got conquered"

37. Binns objected to these comments and conduct directly to Dollinger. Despite his objections, Dollinger never stopped making racially charged comments.

38. Binns also objected to this conduct directly to Pierce. When Binns would object to Pierce, he would tell Binns "don't play that race card with me" and/or "Basil complained, and see where it got him" or words to that effect.

39. During 2014, Binns also heard or was told about the following comments being made about Asian Americans and/or an Asian American employee: Asians don't get legally married because they can get free money and not pay taxes; and referring to an Asian employee as "Egg Roll."

40. The comments set forth herein were made to Binns, his co-workers, or to both.

41. The comments were derogatory, offensive, and discriminatory in nature, were pervasive and sever, and were intended to create, and did create, a hostile work environment for Binns to try to function in.

42. Binns objected to the comments being made to no avail. Binns objected to Tony Dollinger, Sally Neuman, Paul McDonald and to Bill Pierce, all of whom were his supervisors.

43. The offensive, hostile and discriminatory comments listed above were not made about non-African Americans and/or non-Native Americans and/or non-Asian employees, but

8

Case 1:17-cv-01784-WCG   Filed 12/21/17   Page 8 of 20   Document 1

they were made about Binns (an African American); Native American employees including Basil Richmond; and Jimmy Vang (an Asian American).

44. In addition to the racially offensive comments, Dollinger would treat Binns differently than he treated similarly situated Caucasian and/or non-African American employees.

45. For example, Dollinger had other employees check-up on Binns during the day. This did not happen to Caucasian and/or non-African American employees.

46. Also, occasionally on Saturdays, Dollinger would send an employee to the grocery store to pick up food for lunch for the sales staff. The majority of the time, it was Binns who was picked by Dollinger to do so. This was a burden on Binns and also took him away from work and the ability to earn income, as Saturdays are the busiest days for car sales.

47. By repeatedly sending Binns to the store to pick up lunch for the sales staff, Binns lost a large amount of time on the sales floor on the busiest sales day of the week. This resulted in loss of sales, which meant a loss of income for Allen Binns.

48. Moreover, when Binns would return from having to pick up lunch for everyone, Dollinger would demand the receipt and question Binns on the cost of the items, the change he was given, etc.

49. Also, because it took a long time to get everyone's lunch, when Binns would return, Dollinger would yell and scream at him for taking so long to do so.

50. On the few occasions when a Caucasian employee or non-African American employee was asked to pick up lunch for everyone, they were never asked questions about the cost of the items, or change received, after they returned from the store; nor were they yelled and screamed at upon their return.

9

51. An another occasion, Binns told Dollinger that his ex-wife, who he still had a close relationship with, had Stage 4 breast cancer and was near death. Binns asked for time off to visit her in the hospital to say goodbye when she was dying. Binns showed Dollinger the texts that he received saying that she was dying. Dollinger would not let Binns leave work to go see her. In fact, Dollinger stated "yeah, sure, she's going to be dead in 2 days" and told Binns he would be fired if he left.

52. Binns ex-wife did in fact pass away, and Binns then requested time off to attend her funeral, which was denied by Dollinger.

53. Dollinger never did treat, and never would have treated, a Caucasian employee or non-African American or non-Native American employee this way.

54. Dollinger also allowed a non-African American salesman to play a sound-byte on his phone which repeated the words "Nigger-Nigger-Nigger" over and over again in front of Binns and others.

55. No derogatory and discriminatory sound-bytes were ever played disparaging Caucasian or non-African American employees.

56. Also, on another occasion in August, 2014, Bill Pierce approved Binn's request for a day off to attend the Packers' Family Day, two weeks in advance of the day off needed. On the day Binns was scheduled to be off of work, another salesman, who was not African American, and who was scheduled to work, was unable to come in because he didn't have a babysitter. Dollinger called Binns and told him that he had to come in to work, and if he didn't, he would be fired. Because of this threat, Binns reported to work, missing out on the day of activities he had planned with his son.

57. Other examples of disparate treatment include, but are not limited to, the following: (1.) being ridiculed for taking too long in the bathroom or at lunch, which did not happen to Caucasian employees; (2.) not being allowed to leave work early when he came in early – Caucasian employees/managers were allowed to leave work early; (3.) refusing to allow Binns to drive company car home when Caucasian employees were allowed to do so; (4.) refusing to split commissions when Binns had dealings with a customer; (5.) having car sale deals taken away; (6.) having to punch out for lunch breaks; (7.) being reprimanded for passing out cards/marketing and taking too long to do so; and (8.) Sally Neuman would review Binns sales paperwork, and then if she found any errors, she would yell and scream at him and then throw his paperwork all over the room and on the floor, which she did not do to Caucasian employees.

58. Dollinger took time off work when his son was injured.

59. Dollinger allowed a non-African American sales person named "Heath" to take time off work when he couldn't find a sitter or his kids were ill.

60. Dollinger allowed a non-African American sales person named "Josh" to take time off to deal with his marital problems.

61. Binns was not allowed to miss work to spend time with his dying ex-wife; and he was also forced to work on a scheduled day off where he was going to be with his son.

62. After making numerous complaints about Dollinger's conduct, Pierce's conduct, and Neuman's conduct, in July of 2014, Binns was given a written warning for allegedly being late to work. To Binns' knowledge and observation, Caucasian employees were not given written warnings when they were late to work.

11

63. After making numerous complaints about Dollinger's conduct, Pierce's conduct, and Neuman's conduct, in September of 2014, Binns was given a written warning for allegedly not allowing a customer to test drive a vehicle.

64. In addition to the above comments and conduct, in the fall of 2013, Binns was lured away from his current employment with another local car dealership. Binns was promised he would be paid $4,500.00 per month until he could establish himself with the new Russ Darrow dealership. Binns was never paid what he was promised, which resulted in him losing his brand new car as he could not make the car payments.

65. After Binns lost his car, Russ Darrow did allow him to use a car from the dealership lot until he could afford to purchase another vehicle. When Sally Neuman saw Binns using a dealership car, she angrily confronted him and yelled and threatened him about using the car, despite the fact it was agreed he could do so.

66. Ultimately, Binns did obtain another vehicle - it was an old Oldsmobile that Tony Dollinger told Basil Richmond that if he could get the car via a trade in from a customer for a couple hundred bucks, they would give it to Binns to use. Basil Richmond was able to get the vehicle on trade for about $200. However, Russ Darrow then turned around and charged about $2,000 for Binns to buy it, and they then took the money out of his paychecks to pay for it.

67. Binns compensation structure was also different from other non-African American employees so much so that he could barely afford to pay his bills while working at Russ Darrow.

68. Dollinger was also generally disrespectful towards minorities; had a confrontational attitude towards minorities; was quick to anger when dealing with a minority; and would often threaten termination when communicating with a minority employee.

69. During 2014, Russ Darrow's management team also terminated or moved out non-Caucasian employees and replaced them with Caucasian employees.

70. Binns is also aware that Dollinger treated Basil Richmond, a Native American employee, differently from Caucasian or non-Native American employees, including, but not limited to, by taking car sales deals away from Richmond or not allowing others to split commissions with Richmond.

71. Binns was also aware that Dollinger would direct customers away from Basil Richmond, and that he also told Mr. Richmond to go through the back door when "any Indian" was present, and he was instructed not to greet other Native American customers.

72. In addition to the above, desk assignments were generally made based on race – whites with whites, minorities with minorities. Binns and Basil Richmond shared a desk.

73. In October, 2014, Basil Richmond, a Native American, was fired by Dollinger.

74. After Richmond was fired, Binns was still subjected to derogatory, discriminatory and racist comments and actions by Tony Dollinger (until his termination in October/November, 2014); Sally Neuman, and Bill Pierce.

75. Binns objected to Dollinger and Neuman about the disparity in treatment he received, and the disparity in treatment Basil Richmond received to no avail.

76. Binns also complained to Paul McDonald and, eventually, to Bill Pierce, once he took over as general manager, about what was going on, but nothing changed.

77. When Binns would complain to Bill Pierce, he would tell Binns "don't play that racism card with me" and after Basil Richmond was fired, he told Binns "Basil complained and look where that got him" or works to that effect.

13

78. Given the overtly discriminatory, hostile and offensive work environment created and maintained by Russ Darrow's management team, in particular Tony Dollinger, Sally Neuman, and Bill Pierce, it got the point Binns could no longer function in that work environment as it became detrimental to his mental health.

79. Therefore, Binns began looking for a new job. When he was offered a part-time job at Costco in the fall of 2014, he took it to remove himself from the toxic environment at Russ Darrow.

80. In mid-November, 2014, Binns resigned due to the non-stop discriminatory comments, conduct and hostile work environment created by Russ Darrow's management team and some of its employees.

81. At no time, was any non-African American, non-Native American, or non-Asian American employee treated, degraded, or publicly humiliated the way Binns was, nor would they have been.

82. Defendant, Russ Darrow, is liable for the actions of its managers including Tony Dollinger, Sally Neuman and/or Bill Pierce.

## FIRST CAUSE OF ACTION
## TITLE VII – RACE DISCRIMINATION
## COMPENSATION, TERMS, CONDITONS OR PRIVILEGES OF EMPLOYMENT
## 42 U.S.C. § 2000e-2

83. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

84. Defendant discriminated against Plaintiff in the compensation, terms, conditions or privileges of his employment based on his race and/or color by treating Plaintiff in a less favorable manner than similarly situated non-African American employees.

14

85. Defendant's disparate treatment of Plaintiff involved the conduct and adverse employment actions described herein.

86. Plaintiff's race and/or color was a motivating factor in Defendant's employment decisions and actions described herein.

87. Defendant's conduct was a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

88. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

89. The Defendant's conduct was attended by circumstances of a willful disregard of the Plaintiff's federally created rights and interests.

## SECOND CAUSE OF ACTION
## TITLE VII - RACE BASED HARASSMENT
## 42 U.S.C. § 2000e-2

90. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

91. Plaintiff was repeatedly harassed, based on his race and/or color, by Dollinger, Neuman and Pierce, and/or by others aligned with them, which was endorsed and condoned by Dollinger, Neuman and Pierce.

92. The harassment interfered with Plaintiff's ability to perform the duties and responsibilities associated with his employment position with Defendant.

93. Defendant's conduct created a hostile, intimidating, and abusive work environment for Plaintiff to try to function in.

94. Defendant's conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

95. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

96. Defendant's conduct was attended by circumstances of a willful and reckless disregard of the Plaintiff's federally created rights and interests.

## THIRD CAUSE OF ACTION
## TITLE VII– RETALIATION FOR OPPOSING DISCRIMINATORY CONDUCT
## 42 U.S.C. Sec. 2000e-3

97. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

98. Plaintiff Binns opposed what he reasonably believed to be unlawful and discriminatory employment practices in a verbal manner and Defendant was aware of his opposition.

99. Defendant, Russ Darrow, retaliated against Plaintiff Binns for opposing discriminatory employment practices by engaging in adverse employment actions, including but not limited to, taking car sales away from Binns; failing to pay Binns split commissions; failing to pay Binns as promised; failing to pay Binns on time or in the correct amount; adjusting his compensation plan during his employment; by deducting pay from his paycheck if he did not work 40 hours in a week even though he was paid on a commission basis; by charging him more to purchase a car than agreed and then deducting that from his paycheck; and by giving him written warnings for conduct Caucasian employees also engaged in and/or based on false information.

100. Defendant's conduct was a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. § 2000(e)-3.

16

101. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

102. Defendant's conduct was attended by circumstances of a willful and reckless disregard of the Plaintiff's federally created rights and interests.

## FOURTH CAUSE OF ACTION
### TITLE VII RACE DISCRIMINATION - CONSTRUCTIVE DISCHARGE
### 42 U.S.C. § 2000e-2

103. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

104. Defendant, and its supervisors, intentionally made Plaintiff's working conditions so intolerable that a reasonable person would feel forced to resign, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

105. Plaintiff's race and/or color was a motivating factor in Defendants' conduct.

106. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

107. Defendant's conduct as set forth herein was undertaken with malice and/or reckless indifference to Binns' federally protected rights against discrimination.

## FIFTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. §1981 - RACE DISCRIMINATION

108. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

109. Defendant subjected Binns to adverse treatment in the compensation, terms, conditions or privileges of his employment because of his race as set forth previously herein.

110. Defendant's conduct as set forth herein was undertaken in violation of 42 U.S.C. §1981.

111. Plaintiff's race was a motivating factor in Defendant's employment decisions and actions described herein

112. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

113. Defendant's conduct as set forth herein was undertaken with malice and/or reckless indifference to Binns' federally protected rights against discrimination.

## SIXTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. §1981 - RACE BASED HARASSMENT

114. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

115. Plaintiff was repeatedly harassed as previously set forth herein, based on his race, by Dollinger, Neuman and Pierce, and/or by others aligned with them, which was endorsed and condoned by Dollinger, Neuman and Pierce.

116. The harassment interfered with Plaintiff's ability to perform the duties and responsibilities associated with his employment position with Defendant.

117. Defendant's conduct created a hostile, intimidating, and abusive work environment for Plaintiff to try to function in.

118. Defendant's conduct was in violation of 42 U.S.C. § 1981.

119. Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

120. Defendant's conduct was attended by circumstances of a willful and reckless disregard of the Plaintiff's federally created rights and interests.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. §1981 - RETALIATION

121. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

122. Defendant subjected Binns to adverse treatment in the compensation, terms, conditions, or privileges of his employment in retaliation for his complaints about his supervisors' conduct to his supervisors and others.

123. Defendant's conduct as set forth herein was undertaken in violation of 42 U.S.C. §1981.

124 Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

125. Defendant's conduct was attended by circumstances of a willful and reckless disregard of the Plaintiff's federally created rights and interests.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. §1981 – CONSTRUCTIVE DISCHARGE

126. Plaintiff incorporates and realleges the allegations set forth in all previous paragraphs.

127. Defendant, and its supervisors, intentionally made Plaintiff's working conditions so intolerable that a reasonable person would feel forced to resign, in violation of 42 U.S.C. §1981.

128. Plaintiff's race was a motivating factor in Defendants' conduct.

129 Plaintiff has suffered and continues to suffer pecuniary and emotional harm and pain and suffering as a result of Defendant's conduct.

130. Defendant's conduct was attended by circumstances of a willful and reckless disregard of the Plaintiff's federally created rights and interests.

**WHEREFORE** Plaintiff requests the following relief:

A. Judgment against Defendant in an amount sufficient to compensate Binns for all financial damages suffered as a result of Defendant's conduct, including back pay, and reinstatement or front pay, and prejudgment interest on such amounts;

B. Appropriate injunctive relief;

C. Compensatory damages in an amount to be determined at trial;

D. Punitive damages in an amount to be determined at trial;

E. Reasonable attorney's fees and costs incurred in this matter; and

F. Such other and further relief as the Court deems just and appropriate.

**A JURY TRIAL IS DEMANDED**

Dated: December 21, 2017

BAKKE NORMAN, S.C.

By: _____
David C. Schoenberger
Attorney I.D. No. 1035131
Peter Reinhardt
Attorney I.D. No. 1025187
2919 Schneider Ave.
P.O. Box 280
Menomonie, WI 54751
dschoenberger@bakkenorman.com
preinhardt@bakkenorman.com
Tele: (715) 235-9016
Fax: (815) 927-0411

Attorneys for Plaintiff Allen M. Binns